# McKOY *v.* NORTH CAROLINA

No. 88–5909.   Argued October 10, 1989—Decided March 5, 1990

434

MARSHALL, J., delivered the opinion of the Court, in which BRENNAN, WHITE, BLACKMUN, and STEVENS, JJ., joined. WHITE, J., *post*, p. 444, and BLACKMUN, J., *post*, p. 445, filed concurring opinions. KENNEDY, J., filed an opinion concurring in the judgment, *post*, p. 452. SCALIA, J., filed a dissenting opinion, in which REHNQUIST, C. J., and O'CONNOR, J., joined, *post*, p. 457.

*Malcolm Ray Hunter, Jr.*, argued the cause for petitioner. With him on the briefs were *Gordon Widenhouse* and *Robert S. Mahler*.

*Joan H. Byers*, Special Deputy Attorney General of North Carolina, argued the cause for respondent. With her on the

brief were *Lacy H. Thornburg*, Attorney General, *J. Michael Carpenter*, Special Deputy Attorney General, and *Steven F. Bryant* and *Barry S. McNeill*, Assistant Attorneys General.*

JUSTICE MARSHALL delivered the opinion of the Court.

In this case we address the constitutionality of the unanimity requirement in North Carolina's capital sentencing scheme. That requirement prevents the jury from considering, in deciding whether to impose the death penalty, any mitigating factor that the jury does not unanimously find. We hold that under our decision in *Mills* v. *Maryland*, 486 U. S. 367 (1988), North Carolina's unanimity requirement violates the Constitution by preventing the sentencer from considering all mitigating evidence. We therefore vacate petitioner's death sentence and remand for resentencing.

I

Petitioner Dock McKoy, Jr., was convicted in Stanly County, North Carolina, of first-degree murder. During the sentencing phase of McKoy's trial, the trial court instructed the jury, both orally and in a written verdict form, to answer four questions in determining its sentence. Issue One asked:

*A brief of *amici curiae* urging affirmance was filed for the State of California et al. by *John K. Van de Kamp*, Attorney General of California, *Richard B. Iglehart*, Chief Assistant Attorney General, *John H. Sugiyama*, Senior Assistant Attorney General, and *Herbert F. Wilkinson* and *Dane R. Gillette*, Deputy Attorneys General, joined by *Don Siegelman*, Attorney General of Alabama, *Robert K. Corbin*, Attorney General of Arizona, *John J. Kelly*, Chief State's Attorney of Connecticut, *Michael J. Bowers*, Attorney General of Georgia, *James T. Jones*, Attorney General of Idaho, *Linley E. Pearson*, Attorney General of Indiana, *Frederic J. Cowan*, Attorney General of Kentucky, *William L. Webster*, Attorney General of Missouri, *Michael C. Moore*, Attorney General of Mississippi, *Brian McKay*, Attorney General of Nevada, *Peter N. Perretti, Jr.*, Attorney General of New Jersey, *Hal Stratton*, Attorney General of New Mexico, *Robert H. Henry*, Attorney General of Oklahoma, *Ernest D. Preate, Jr.*, Attorney General of Pennsylvania, *Jim Mattox*, Attorney General of Texas, and *Mary Sue Terry*, Attorney General of Virginia.

"Do you unanimously find from the evidence, beyond a reasonable doubt, the existence of one or more of the following aggravating circumstances?" App. 6, 23. The jury found two statutory aggravating circumstances: that McKoy "had been previously convicted of a felony involving the use or threat of violence to the person"[1] and that the murder was committed against a deputy sheriff who was "engaged in the performance of his official duties."[2] The jury therefore answered "Yes" to Issue One and was instructed to proceed to the next Issue.

Issue Two asked: "Do you unanimously find from the evidence the existence of one or more of the following mitigating circumstances?" *Id.*, at 8, 24. The judge submitted to the jury eight possible mitigating circumstances. With respect to each circumstance, the judge orally instructed the jury as follows: "If you do not unanimously find this mitigating circumstance by a preponderance of the evidence, so indicate by having your foreman write, 'No,' in that space" on the verdict form. *Id.*, at 10–13. The verdict form reiterated the unanimity requirement: "In the space after each mitigating circumstance, write 'Yes,' if you unanimously find that mitigating circumstance by a preponderance of the evidence. Write, 'No,' if you do not unanimously find that mitigating circumstance by a preponderance of the evidence." *Id.*, at 24.

The jury unanimously found the statutory mitigating circumstance that McKoy's capacity "to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired."[3] It also unanimously found the nonstatutory mitigating circumstance that McKoy had a "borderline intellectual functioning with a IQ test score of 74." *Id.*, at 25. The jury did not, however, unanimously

---

[1] N. C. Gen. Stat. § 15A–2000(e)(3) (1988).

[2] § 15A–2000(e)(8).

[3] § 15A–2000(f)(6).

find the statutory mitigating circumstances that McKoy committed the crime while "under the influence of mental or emotional disturbance"[4] or that McKoy's age at the time of the crime, 65, was a mitigating factor.[5] The jury also failed to find unanimously four nonstatutory mitigating circumstances: that for several decades McKoy exhibited signs of mental or emotional disturbance or defect that went untreated; that McKoy's mental and emotional disturbance was aggravated by his poor physical health; that McKoy's ability to remember the events of the day of the murder was actually impaired; and that there was any other circumstance arising from the evidence that had mitigating value.[6]

Because the jury found the existence of mitigating circumstances, it was instructed to answer Issue Three, which asked: "Do you unanimously find beyond a reasonable doubt that the mitigating circumstance or circumstances *found by you* is, or are, insufficient to outweigh the aggravating circumstance or circumstances found by you?" *Id.*, at 13, 26 (emphasis added). The jury answered this issue "Yes," and so proceeded to the final issue. Issue Four asked: "Do you unanimously find beyond a reasonable doubt that the aggravating circumstance or circumstances found by you is, or are, sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstance or circumstances *found by you*?" *Id.*, at 14, 26 (emphasis added). The jury again responded "Yes." Pursuant to the verdict form and the court's instructions, the jury therefore made a binding recommendation of death.

During the pendency of petitioner's direct appeal to the North Carolina Supreme Court, this Court decided *Mills* v.

---

[4] § 15A–2000(f)(2).

[5] § 15A–2000(f)(7).

[6] § 15A–2000(f)(9). Although this "catch-all" provision is provided by statute, it is grouped with the nonstaturory circumstances because it allows for the consideration of mitigating factors not statutorily specified.

*Maryland, supra.* There, we reversed a death sentence imposed under Maryland's capital punishment scheme because the jury instructions and verdict form created "a substantial probability that reasonable jurors . . . well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." *Id.,* at 384. We reasoned that allowing a "holdout" juror to prevent the other jurors from considering mitigating evidence violated the principle established in *Lockett* v. *Ohio,* 438 U. S. 586 (1978), that a sentencer may not be precluded from giving effect to all mitigating evidence. 486 U. S., at 375.

Petitioner challenged his sentence on the basis of *Mills.* The North Carolina Supreme Court, in a split decision, purported to distinguish *Mills* on two grounds and therefore denied relief. First, it noted that "Maryland's procedure required the jury to impose the death penalty if it 'found' at least one aggravating circumstance and did not 'find' any mitigating circumstances" or "if it unanimously found that the mitigating circumstances did not outweigh the aggravating circumstances." 323 N. C. 1, 40, 372 S. E. 2d 12, 33 (1988). In contrast, the court stated, Issue Four in North Carolina's scheme allows the jury to recommend life imprisonment "if it feels that the aggravating circumstances are not sufficiently substantial to call for the death penalty, even if it has found several aggravating circumstances and no mitigating circumstances." *Ibid.*

Second, the court asserted that whereas in Maryland's scheme evidence remained "legally relevant" as long as one or more jurors found the presence of a mitigating circumstance supported by that evidence, *id.,* at 41, 372 S. E. 2d, at 34, "in North Carolina evidence in effect becomes legally irrelevant to prove mitigation if the defendant fails to prove to the satisfaction of all the jurors that such evidence supports the finding of a mitigating factor," *id.,* at 40, 372 S. E. 2d, at 33. The North Carolina Supreme Court believed that we

had found the "relevance" of the evidence in *Mills* a signifi-
cant factor because we had stated in a footnote that " '[n]o one
has argued here, nor did the Maryland Court of Appeals sug-
gest, that mitigating evidence can be rendered legally "irrele-
vant" by one holdout vote.' " *Id.*, at 41, 372 S. E. 2d, at 34
(quoting *Mills*, 486 U. S., at 375, n. 7). The court thus in-
terpreted *Mills* as allowing States to define as "irrelevant"
and to exclude from jurors' consideration any evidence intro-
duced to support a mitigating circumstance that the jury did
not unanimously find. Accordingly, the State Supreme Court
upheld McKoy's death sentence.

## II

Despite the state court's inventive attempts to distinguish
*Mills*, our decision there clearly governs this case. First,
North Carolina's Issue Four does not ameliorate the constitu-
tional infirmity created by the unanimity requirement. Issue
Four, like Issue Three, allows the jury to consider only miti-
gating factors that it unanimously finds under Issue Two.
Although the jury may opt for life imprisonment even where
it fails unanimously to find any mitigating circumstances, the
fact remains that the jury is required to make its decision
based only on those circumstances it unanimously finds. The
unanimity requirement thus allows one holdout juror to pre-
vent the others from giving effect to evidence that they
believe calls for a " 'sentence less than death.' " *Eddings*
v. *Oklahoma*, 455 U. S. 104, 110 (1982), quoting *Lockett*,
*supra*, at 604 (plurality opinion). Moreover, even if all 12
jurors agree that there are *some* mitigating circumstances,
North Carolina's scheme prevents them from giving effect to
evidence supporting any of those circumstances in their delib-
erations under Issues Three and Four unless they unani-
mously find the existence of the *same* circumstance. This is
the precise defect that compelled us to strike down the Mary-
land scheme in *Mills*. See 486 U. S., at 374. Our decision
in *Mills* was not limited to cases in which the jury is *required*

to impose the death penalty if it finds that aggravating circumstances outweigh mitigating circumstances or that no mitigating circumstances exist at all. Rather, we held that it would be the "height of arbitrariness to allow *or* require the imposition of the death penalty" where 1 juror was able to prevent the other 11 from giving effect to mitigating evidence. *Ibid.* (emphasis added).

Second, the State Supreme Court's holding that mitigating evidence is "relevant" only if the jury unanimously finds that it proves the existence of a mitigating circumstance distorts the concept of relevance. "[I]t is universally recognized that evidence, to be relevant to an inquiry, need not conclusively prove the ultimate fact in issue, but only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *New Jersey* v. *T. L. O.*, 469 U. S. 325, 345 (1985), quoting Fed. Rule Evid. 401. The meaning of relevance is no different in the context of mitigating evidence introduced in a capital sentencing proceeding. As the Chief Justice of the North Carolina Supreme Court stated in dissent in this case:

> "Relevant mitigating evidence is evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value. Whether the fact-finder accepts or rejects the evidence has no bearing on the evidence's relevancy. The relevance exists even if the fact-finder fails to be persuaded by that evidence. It is not necessary that the item of evidence alone convinces the trier of fact or be sufficient to convince the trier of fact of the truth of the proposition for which it is offered." 323 N. C., at 55–56, 372 S. E. 2d, at 45 (Exum, C. J., dissenting), citing M. Graham, Handbook of Federal Evidence § 401.1, n. 12 (2d ed. 1986).

Clearly, then, the mitigating circumstances not unanimously found to be present by the jury did not become "irrelevant"

to mitigation merely because one or more jurors either did not believe that the circumstance had been proved as a factual matter or did not think that the circumstance, though proved, mitigated the offense.[7]

Furthermore, our holdings in *Skipper* v. *South Carolina*, 476 U. S. 1 (1986), and *Eddings* v. *Oklahoma, supra,* show that the mere declaration that evidence is "legally irrelevant" to mitigation cannot bar the consideration of that evidence if the sentencer could reasonably find that it warrants a sentence less than death. In *Skipper*, the trial court had excluded as irrelevant to mitigation evidence that the defendant had adjusted well to prison life. This Court reversed the death sentence on the ground that such evidence was "by its nature relevant to the sentencing determination" because it might convince the jury that the defendant "would pose no undue danger to his jailers or fellow prisoners and could lead a useful life behind bars if sentenced to life imprisonment." 476 U. S., at 7. Similarly, in *Eddings*, the sentencing court had ruled that it was precluded by law from considering evidence of the defendant's troubled childhood and emotional disturbance. The State Court of Criminal Appeals affirmed, holding that such evidence was irrelevant to mitigation because it did not support a legal excuse from criminal liability. This Court reversed on the ground that such evidence was undoubtedly relevant to mitigation even if it did not *excuse* the defendant's conduct. 455 U. S., at 113–116.

Nor can the State save the unanimity requirement by characterizing it as a standard of proof intended to ensure the reliability of mitigating evidence. The State's reliance on

---

[7] In North Carolina's capital sentencing scheme, if the jury finds a statutory mitigating circumstance to be present, that circumstance is deemed to have mitigating value as a matter of law. *State* v. *Stokes*, 308 N. C. 634, 653, 304 S. E. 2d 184, 196 (1983). For nonstatutory mitigating circumstances, the jury must decide both whether the circumstance has been proved and whether it has mitigating value. See *State* v. *Pinch*, 306 N. C. 1, 26, 292 S. E. 2d 203, 223, cert. denied, 459 U. S. 1056 (1982), citing *State* v. *Johnson*, 298 N. C. 47, 72–74, 257 S. E. 2d 597, 616–617 (1979).

*Patterson* v. *New York*, 432 U. S. 197 (1977), is misplaced. In that case, this Court rejected a due process challenge to a New York law requiring a defendant charged with second-degree murder to prove by a preponderance of the evidence the affirmative defense of extreme emotional disturbance in order to reduce the crime to manslaughter. The Court reasoned that a State is not constitutionally required to provide that affirmative defense. But if a State "nevertheless chooses to recognize a factor that mitigates the degree of criminality or punishment, . . . the State may assure itself that the fact has been established with reasonable certainty." *Id.*, at 209. *Patterson*, however, did not involve the validity of a capital sentencing procedure under the Eighth Amendment. The Constitution *requires* States to allow consideration of mitigating evidence in capital cases. Any barrier to such consideration must therefore fall. As we stated in *Mills:*

> "Under our decisions, it is not relevant whether the barrier to the sentencer's consideration of all mitigating evidence is interposed by statute, *Lockett* v. *Ohio, supra; Hitchcock* v. *Dugger*, 481 U. S. 393 (1987); by the sentencing court, *Eddings* v. *Oklahoma, supra;* or by an evidentiary ruling, *Skipper* v. *South Carolina, supra.* The same must be true with respect to a single juror's holdout vote against finding the presence of a mitigating circumstance. Whatever the cause, . . . the conclusion would necessarily be the same: 'Because the [sentencer's] failure to consider all of the mitigating evidence risks erroneous imposition of the death sentence, in plain violation of *Lockett*, it is our duty to remand this case for resentencing.' *Eddings* v. *Oklahoma*, 455 U. S., at 117, n. (O'CONNOR, J., concurring)." 486 U. S., at 375.

It is no answer, of course, that the jury is permitted to "consider" mitigating evidence when it decides collectively, under Issue Two, whether any mitigating circumstances exist. Rather, *Mills* requires that each juror be permitted

to consider and give effect to mitigating evidence when deciding the ultimate question whether to vote for a sentence of death. This requirement means that, in North Carolina's system, each juror must be allowed to consider all mitigating evidence in deciding Issues Three and Four: whether aggravating circumstances outweigh mitigating circumstances, and whether the aggravating circumstances, when considered with any mitigating circumstances, are sufficiently substantial to justify a sentence of death. Under *Mills*, such consideration of mitigating evidence may not be foreclosed by one or more jurors' failure to find a mitigating circumstance under Issue Two.

Finally, we reject the State's contention that requiring unanimity on mitigating circumstances is constitutional because the State also requires unanimity on aggravating circumstances. The Maryland scheme in *Mills* also required unanimity on both mitigating and aggravating circumstances. See *id.*, at 384–389. Such consistent treatment did not, however, save the unanimity requirement for mitigating circumstances in that case. A State may not limit a sentencer's consideration of mitigating evidence merely because it places the same limitation on consideration of aggravating circumstances. As the Court stated in *Penry* v. *Lynaugh*, 492 U. S. 302 (1989):

> "'In contrast to the carefully defined standards that must narrow a sentencer's discretion to *impose* the death sentence, the Constitution limits a State's ability to narrow a sentencer's discretion to consider relevant evidence that might cause it to *decline to impose* the death sentence.' *McCleskey* v. *Kemp*, 481 U. S. 279, 304 (1987) (emphasis in original). Indeed, it is precisely because the punishment should be directly related to the personal culpability of the defendant that the jury must be allowed to consider and give effect to mitigating evidence relevant to a defendant's character or record or the circumstances of the offense." *Id.*, at 327–328.

## III

We conclude that North Carolina's unanimity requirement impermissibly limits jurors' consideration of mitigating evidence and hence is contrary to our decision in *Mills*.[8] We therefore vacate the petitioner's death sentence and remand this case to the North Carolina Supreme Court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE WHITE, concurring.

There is nothing in the Court's opinion, as I understand it, that would invalidate on federal constitutional grounds a jury instruction that does not require unanimity with respect to mitigating circumstances but requires a juror to consider a mitigating circumstance only if he or she is convinced of its existence by a preponderance of the evidence. Under such an instruction, any juror must weigh in the balance any mitigating circumstance that in his or her mind is established by a preponderance of the evidence, whether or not any other jurors are likewise convinced. Neither does the Court's opinion hold or infer that the Federal Constitution forbids a State to place on the defendant the burden of persuasion with respect to mitigating circumstances. On this basis, I concur in the Court's opinion.

---

[8] In fact, this case presents an even clearer case for reversal than *Mills* v. *Maryland*, 486 U. S. 367 (1988). In *Mills*, the Court divided over the issue whether a reasonable juror could have interpreted the instructions in that case as allowing individual jurors to consider only mitigating circumstances that the jury unanimously found. Compare *id.*, at 375–384, with *id.*, at 391–395 (REHNQUIST, C. J., dissenting). Indeed, the dissent in *Mills* did not challenge the Court's holding that the instructions, if so interpreted, were unconstitutional. In this case, by contrast, the instructions and verdict form expressly limited the jury's consideration to mitigating circumstances unanimously found.

JUSTICE BLACKMUN, concurring.

I join the Court's opinion, but write separately only to underscore my conviction that *Mills* v. *Maryland*, 486 U. S. 367 (1988), controls this case and that *Mills* was correctly decided.

I

In the dissent's view, the Court in *Mills* simply *assumed*, but did not decide, the invalidity of a requirement that mitigating factors could be considered by the jury only if they were found unanimously. That characterization cannot be squared with the text of the *Mills* opinion. Part II of that opinion directly addressed the question whether such a requirement was permissible. The Court concluded that a rule mandating unanimous agreement before any juror could consider a particular mitigating factor was forbidden by our decisions in *Lockett* v. *Ohio*, 438 U. S. 586 (1978), and *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982). That conclusion was an essential step in the Court's rationale for overturning the Maryland statute. Ambiguous jury instructions, even in a capital case, do not violate the Eighth Amendment simply because they are ambiguous. And the question addressed in Part III of the opinion—whether a reasonable juror might have interpreted the instructions as precluding his consideration of any mitigating factor not found unanimously—would have been wholly lacking in constitutional significance if such a rule were permissible. Rather, the Maryland instructions were held to be invalid because they were susceptible of two plausible interpretations, *and under one of those interpretations the instructions were unconstitutional.*

The dissent acknowledges that "there is language in *Mills* . . . suggesting that a unanimity requirement would contravene this Court's decisions." *Post*, at 459. The dissent contends, however, that any such suggestions were dicta. In the dissent's view the propriety of a unanimity requirement was not properly before the Court, since Maryland had conceded that such a requirement would be unconstitutional and

argued only that its instructions imposed no such rule. That position is untenable.

First, even if the issue had not been disputed, the Court's resolution of the question would constitute a binding precedent. It is unusual, but hardly unheard of, for this Court to decide significant legal questions on which the parties have not joined issue. See, *e. g.*, *Teague* v. *Lane*, 489 U. S. 288 (1989); *Penry* v. *Lynaugh*, 492 U. S. 302, 313–314 (1989) (holding that *Teague* principles apply to capital sentencing). Although the wisdom of deciding such issues without briefing and argument has been questioned, see *Teague*, 489 U. S., at 326–327 (BRENNAN, J., dissenting); *Penry*, 492 U. S., at 349 (STEVENS, J., concurring in part and dissenting in part), it has not been suggested heretofore that such decisions are lacking in precedential value. The dissent's approach to *stare decisis* would allow a respondent before this Court, by means of a timely concession, to avoid resolution of a recurring legal question so that it might be litigated at a more propitious time.[1] This approach would require that litigants seeking to rely on a decision of this Court must scour the briefs in order to determine what points were and were not contested. That is not and cannot be the law.

Moreover, the dissent distorts the record in contending that the propriety of a unanimity requirement was not at issue in *Mills*. The argument section of the petitioner's brief in *Mills* began: "The underlying question is whether the Maryland Legislature may constitutionally require unanimous agreement by the jurors before any mitigating circumstance may be considered in the weighing process." Brief for Petitioner, O. T. 1987, No. 87–5367, p. 9. The bulk of the State's response was devoted to the argument that no

---

[1] Cf. *United States* v. *W. T. Grant Co.*, 345 U. S. 629, 632 (1953) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i. e.*, does not make the case moot").

reasonable juror would interpret the instructions in the manner that Mills suggested was possible. The State also contended, however:

> "Under the interpretation of the statute proffered by Petitioner, an unconstitutional restriction existed in that unanimity on a particular mitigating circumstance was required before it could be weighed in determining the appropriate sentence. However, *Lockett* and *Eddings* relate to restrictions on 'input,' not the subsequent deliberative process. Although a jury has twelve component parts, it is a single entity. The rejection of a mitigating circumstance, after introduction and full consideration of the evidence, is simply a factual determination. There is no legal impediment to the consideration of the evidence. The requirement of jury unanimity is simply not the type of restriction found unconstitutional in *Lockett* and *Eddings*. *See State* v. *Kirkley*, 308 N. C. 196, 302 S. E. 2d 144, 157 (1983)." Brief for Respondent in *Mills* 19–20 (footnotes omitted).

The dissent quotes the first sentence of this passage, characterizing it as a "concession" by the State that a unanimity requirement would be invalid. *Post*, at 459. But since the remainder of the paragraph sets forth precisely the same argument in defense of the unanimity requirement that the dissent advances today, compare *post*, at 465–466,[2] the suggestion that Maryland conceded the point is rather pecu-

---

[2] Also compare Brief for Respondent in *Mills* 20, n. 7 ("Petitioner views a jury as twelve independent sentencers operating free of the views of the others. Such a view is completely contrary to any notion of guided discretion"), with *post*, at 469 ("Likewise incompatible with the Court's theory is the principle of guided discretion that we have previously held to be essential to the validity of capital sentencing. . . . There is little guidance in a system that requires each individual juror to bring to the ultimate decision his own idiosyncratic notion of what facts are mitigating, untempered by the discipline of group deliberation and agreement").

liar. Indeed, the paragraph quoted above concludes with a citation to *Kirkley*—the North Carolina case which first upheld against constitutional attack the requirement that a jury could consider only those mitigating factors unanimously found. Read in context, the sentence quoted by the dissent is plainly a *summary* of Mills' argument, not an admission of its correctness. The Maryland Court of Appeals had concluded that a unanimity requirement would violate the Eighth Amendment, but had determined that the challenged instructions imposed no such requirement. The State, however, was clearly entitled to defend the Court of Appeals' judgment on the alternative ground that, even if a reasonable jury might have read the instructions as requiring a unanimous finding before any mitigating factor could be considered, that requirement would not contravene the dictates of *Lockett* and *Eddings*. The State raised precisely this argument, and this Court rejected it.[3]

## II

I remain convinced, moreover, that *Mills* was correctly decided. It is apparent to me that the rule at issue here implicates the concerns expressed in *Lockett* and *Eddings*. In my view it is pointless to ask whether the sentencer in this case is the jury or the jurors. The jurors *are* the jury: and if 11 of them are forbidden to give effect to mitigating evidence which they deem persuasive, then the right guaranteed by *Lockett* has been effectively negated, even if the restriction is imposed by the 12th member of the sentencing body. If state law provided that all mitigating evidence was first to be presented to the foreperson, who could then decide what por-

---

[3] Nor does JUSTICE WHITE's separate opinion in *Mills v. Maryland*, 486 U. S. 367, 389 (1988), provide a basis for recharacterizing the holding of the Court. I am far from certain that JUSTICE WHITE's concurrence will bear the construction that the dissent places upon it. In any event, the meaning of a majority opinion is to be found within the opinion itself; the gloss that an individual Justice chooses to place upon it is not authoritative.

tions of it other jurors would be allowed to view, I have no doubt that the sentencer's ability to give effect to the evidence would be impaired. The fact that North Carolina permits any 1 of 12 individuals to exercise the veto hardly makes the impairment less severe.

The dissent suggests that the rule announced in *Mills* is an aberration, a quirk of our Eighth Amendment jurisprudence. In fact, however, it is the North Carolina unanimity requirement which represents an extraordinary departure from the way in which juries customarily operate. Juries are typically called upon to render unanimous verdicts on the ultimate issues of a given case. But it is understood that different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line.[4] Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.[5]

---

[4] Moreover, the jury's inability to agree as to an ultimate issue typically results in a deadlock or hung jury. Here the inability to agree requires the jury to proceed upon the assumption that a particular mitigating circumstance has been proved *not* to exist.

[5] There is one significant exception to this principle, but it does not support the dissent's position. In federal criminal prosecutions, where a unanimous verdict is required, the Courts of Appeals are in general agreement that "[u]nanimity . . . means more than a conclusory agreement that the defendant has violated the statute in question; there is a requirement of substantial agreement as to the principal factual elements underlying a specified offense." *United States* v. *Ferris*, 719 F. 2d 1405, 1407 (CA9 1983). Accord, *United States* v. *Duncan*, 850 F. 2d 1104, 1110–1115 (CA6 1988); *United States* v. *Beros*, 833 F. 2d 455, 461 (CA3 1987); *United States* v. *Schiff*, 801 F. 2d 108, 114 (1986), cert. denied, 480 U. S. 945 (1987); *United States* v. *Gipson*, 553 F. 2d 453, 456–459 (CA5 1977). But see *United States* v. *Bouquett*, 820 F. 2d 165, 169 (CA6 1987) (questioned in *Duncan*, 850 F. 2d, at 1112–1113). This rule does not require that each bit of evidence be unanimously credited or entirely discarded, but it does require unanimous agreement as to the nature of the defendant's violation, not simply the fact that a violation has occurred. The North Carolina requirement that *aggravating* circumstances be found unanimously therefore has some analogue, albeit imperfect, in another area of the law. This

We might compare, for example, a criminal trial in which the defendant presents the testimony of an alibi witness. It surely could not be supposed that the State could enforce an evidentiary rule requiring a preliminary jury determination as to the credibility of this evidence, and providing that no juror could give it weight unless *every* juror deemed it worthy of belief. Such a rule would plainly interfere with the ability of the accused to present a defense to the factfinder, just as the rule at issue here impairs the defendant's right to have evidence in mitigation considered by the sentencer.

As the dissent points out, our cases have upheld state rules that place upon criminal defendants the burden of proving affirmative defenses. See, *e. g.*, *Patterson* v. *New York*, 432 U. S. 197 (1977). For two reasons, however, these cases are not on point. First, the Court's reasoning in the affirmative-defense cases appears to rest upon a "greater power includes the lesser" argument: since the State is not constitutionally required to recognize the defense at all, it may take the lesser step of placing the burden of proof upon the defendant. See *id.*, at 209. But since the State may *not* exercise the greater power of prohibiting a capital defendant from introducing mitigating evidence, that reasoning is inapposite here. Second, the dissent's analogy to the affirmative-defense cases confuses the concepts of unanimity and burden of proof. To say that the burden of proof may be placed upon the defendant says nothing at all about the situation in which some jurors, but not others, believe that the burden has been satisfied. The dissent's analogy presumes that once the elements of an offense have been proved, the jury's failure to agree as

principle is a protection for the *defendant*, however; its premise is that "[r]equiring the vote of twelve jurors to convict a defendant does little to insure that his right to a unanimous verdict is protected unless this prerequisite of jury consensus as to the defendant's course of action is also required." *Gipson*, 553 F. 2d, at 458. There is no analogous principle requiring that jurors voting to acquit must agree upon the basis for their reasonable doubt.

to an affirmative defense results in a conviction (just as a North Carolina jury's failure to agree as to the presence of a given mitigating factor creates a "finding" that the factor is not present); but our cases do not say that, and it is not at all clear that a conviction, rather than a hung jury, would be the outcome. See *State* v. *Harris*, 89 R. I. 202, 207, 152 A. 2d 106, 109 (1959) (although the defendant bears the burden of proof as to insanity, "there is a vast difference between an instruction as to the persuasiveness of evidence and an instruction as to *agreement*. If the jury could not agree upon defendant's sanity then no verdict could be reached") (emphasis in original). The peculiar infirmity of the North Carolina sentencing procedure is not simply that it places the burden of proving mitigation upon the defendant, but that all disagreements among the jurors as to whether that burden has been satisfied must be resolved in favor of the State.

## III

In *Mills*, the Court described two scenarios in which the operation of the unanimity requirement would result in a sentence of death, even though 11 (in the first scenario) or all 12 of the jurors believed that the mitigating circumstances outweighed those in aggravation. In the first hypothetical, 11 jurors believed that six mitigating factors were present, but the twelfth juror's veto prevented any of the evidence in mitigation from being considered at the final stage of the sentencing process. 486 U. S., at 373–374. In the second scenario, all 12 jurors agreed that *some* mitigating factors were present, and outweighed the factors in aggravation, but the jury was not unanimous as to the existence of any particular mitigating circumstance. *Id.*, at 374. We concluded that "it would certainly be the height of arbitrariness to allow or require the imposition of the death penalty under the circumstances so postulated." *Ibid.* That assessment seems to me unanswerable.

Of course, the North Carolina statute also requires that the jury be unanimous as to the existence of a given *aggravating* factor, and as to the appropriateness of the death penalty in light of the aggravating and mitigating circumstances unanimously found. The possibility that a single juror with aberrational views will thwart the majority therefore sometimes may work in favor of the capital defendant. But the injustice of a capital sentence in a case where 11 jurors believe that mitigation outweighs aggravation is hardly compensated for by the possibility that in some *other* case a defendant will escape the death penalty when 11 jurors believe death to be appropriate. The State's reliance on the "symmetry" of its law seems to me to be the very antithesis of the constitutional command that the sentencer be allowed to consider the "character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson* v. *North Carolina*, 428 U. S. 280, 304 (1976) (plurality opinion). I therefore agree that petitioner's death sentence must be vacated, and I join the opinion of the Court.

JUSTICE KENNEDY, concurring in the judgment.

Jury unanimity, it is true, is an accepted, vital mechanism to ensure that real and full deliberation occurs in the jury room, and that the jury's ultimate decision will reflect the conscience of the community. Yet the unique interaction of the elements of the sentencing statute in issue here can allow the same requirement of unanimity to produce a capital sentence that lacks unanimous support of the jurors, and, more than this, is thought to be inappropriate by 11 of the 12.

As a consequence, the statute here can operate in the same manner as the jury instructions in *Mills* v. *Maryland*, 486 U. S. 367 (1988), as construed by the majority in that case, to produce a result that is "the height of arbitrariness." On this sole rationale, I concur in the judgment here. The

Court's reliance on our decisions in *Lockett* v. *Ohio*, 438 U. S. 586 (1978), and *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982), to support today's result stretches those cases beyond their proper bounds and threatens to add confusion to an already troubled area of our jurisprudence.

That this case may be resolved on a ground more consistent with our precedents is evident from the *Mills* opinion itself. The relevant section of that decision begins:

> "Petitioner's argument is straightforward, and well illustrated by a hypothetical situation he contends is possible under the Maryland capital sentencing scheme:
>
> "'If eleven jurors agree that there are six mitigating circumstances, the result is that no mitigating circumstance is found. Consequently, there is nothing to weigh against any aggravating circumstance found and the judgment is death even though eleven jurors think the death penalty wholly inappropriate.' Brief for Petitioner 11." 486 U. S., at 373–374.

Petitioner's counsel emphasized this point in the brief discussion of constitutionality in the *Mills* oral argument:

> "The problem with the constitutionality is that . . . you have the possibility of not 12 jurors agreeing but one juror deciding it's death. And our position, of course, is it's difficult to imagin[e] a more arbitrary system than luck of the draw: do I get one juror?" Tr. of Oral Arg., O. T. 1987, No. 87–5367, pp. 23–24.

The central idea of these passages is that the death penalty should not be imposed on the basis of a single juror's vote where 11 jurors think the penalty undeserved. The Court stated: "The possibility that a single juror could block [consideration of a mitigating factor], and *consequently require the jury to impose the death penalty*, is one we dare not risk." 486 U. S., at 384 (emphasis added).

Application of the death penalty on the basis of a single juror's vote is "intuitively disturbing." *Id.*, at 374. More important, it represents imposition of capital punishment through a system that can be described as arbitrary or capricious. The Court in *Mills* described such a result as the "height of arbitrariness." *Ibid.* Given this description, it is apparent that the result in *Mills* fits within our line of cases forbidding the imposition of capital punishment on the basis of "caprice," in "an arbitrary and unpredictable fashion," or through "arbitrary" or "freakish" means. See, *e. g.*, *Franklin* v. *Lynaugh*, 487 U. S. 164, 181 (1988); *California* v. *Brown*, 479 U. S. 538, 541 (1987).

A holdout juror incident can occur under North Carolina's statute if all jurors find an aggravating factor they agree to be of sufficient gravity to support a penalty of death, and 11 jurors find an outweighing mitigating factor that one juror refuses, for whatever reason, to accept. If the jurors follow their instructions, as we must assume they will, the 11 must disregard the mitigating circumstance. After the balancing step of the statute is performed, there can be only one result. The "'judgment is death even though eleven jurors think the death penalty wholly inappropriate.'" *Mills, supra*, at 374. Given the reasoned, moral judgment inherent in capital sentencing by the jury, the extreme arbitrariness of this potential result is evident.

This said, it must be stressed that much in the opinion for the Court in today's case goes, without cause, much further. It is true that, in addition to discussing the extreme arbitrariness of the statute at issue, the *Mills* opinion went on to state that the unanimity requirement was inconsistent with our holdings in *Lockett, Eddings, Hitchcock* v. *Dugger*, 481 U. S. 393 (1987), and *Skipper* v. *South Carolina*, 476 U. S. 1 (1986). Even so, the Court stressed that the unanimity requirement there, combined with the final stage of the Maryland statute, could produce an arbitrary result: "a jury that does not unanimously agree on the existence of any mitigat-

ing circumstance may not give mitigating evidence any effect whatsoever, and *must impose the sentence of death.*" 486 U. S., at 375 (emphasis added).

I cannot agree with the Court's statement today that "[o]ur decision in *Mills* was not limited to cases in which the jury is *required* to impose the death penalty if it finds that aggravating circumstances outweigh mitigating circumstances or that no mitigating circumstances exist at all."* *Ante,* at 439–440 (emphasis in original). The statute in *Mills* did include such a requirement, and the statute here also, albeit in more limited circumstances, can allow 1 juror's decision to override that of 11 others as to the defendant's ultimate sentence. It is for this reason only that I concur in the judgment vacating the sentence.

I would recognize the arbitrary operation of the North Carolina system as the exclusive basis of our decision, for the unanimity requirement, standing alone, is not invalid under our *Lockett* line of cases. In *Lockett* itself, we invalidated an Ohio statute that precluded presentation of certain types of mitigating evidence to the jury. In *Eddings, Skipper,* and *Hitchcock,* we applied the same rule to judicial instructions that barred consideration of certain nonstatutory evidence bearing on the defendant's character. More recently, in *Penry* v. *Lynaugh,* 492 U. S. 302 (1989), we held that *Lockett*'s requirements were not met in a statutory scheme that provided no avenue through which mitigating evidence could be considered, no matter how clearly the evidence in mitigation might have been established for the jury, thereby making its presentation meaningless.

---

*Indeed, the broad language of today's opinion might be read to suggest that a scheme requiring jury unanimity as to the presence *or absence* of a mitigating factor could violate the Constitution. Such a requirement, however, enhances the reliability of the jury's decision without any risk that a single holdout juror may impose a sentence against the views of the other 11. Maryland claimed that its unanimity requirement operated this way in *Mills.* It is no surprise that the majority in *Mills* assumed such a scheme would be constitutional.

*Lockett* and its progeny stand only for the proposition that a State may not cut off in an absolute manner the presentation of mitigating evidence, either by statute or judicial instruction, or by limiting the inquiries to which it is relevant so severely that the evidence could never be part of the sentencing decision at all. The requirement that a jury unanimously find mitigating circumstances in itself does none of these things. In a State where there is no final mandatory or balancing stage in the sentencing process that could allow a single juror to control the ultimate outcome, it simply imposes a proof requirement that must be met before the evidence can be used as a mitigating factor specifically found by the jury as a whole. As we stated in *Saffle* v. *Parks, post,* at 490, there is a "simple and logical difference between rules that govern *what* factors the jury must be permitted to consider in making the sentencing decision and rules that govern *how* the State may guide the jury in considering and weighing those factors in reaching a decision." The extreme control given to one juror in the North Carolina scheme in effect can allow that juror alone to impose a capital sentence. It is that fact, and not a novel application of *Lockett* to requirements intended to enhance the reliability of the jury's findings, that is dispositive.

The description of a "one juror veto" system in *Mills* as the "height of arbitrariness" supports the result here, and I would decide this case on that basis alone. I agree with JUSTICE WHITE, *ante,* at 444, that the discussion of *Lockett* in today's opinion casts no doubt on evidentiary requirements for presentation of mitigating evidence such as assigning the burden of proof to the defendant or requiring proof of mitigating circumstances by a preponderance of the evidence. His opinion and our other cases already make clear that the discussion of *Lockett* in today's opinion has no application beyond the issue presented in this case. Because of my concern that the opinion itself might otherwise have spawned confusing capital litigation over novel and unsupportable

*Lockett* claims in the lower courts, I can concur only in the Court's judgment.

JUSTICE SCALIA, with whom THE CHIEF JUSTICE and JUSTICE O'CONNOR join, dissenting.

Today the Court holds that the Eighth Amendment prohibits a State from structuring its capital sentencing scheme to channel jury discretion by requiring that mitigating circumstances be found unanimously. Because I believe that holding is without support in either the Eighth Amendment or our previous decisions, I dissent.

I

Under North Carolina's capital sentencing scheme, once a defendant is found guilty of capital murder, a separate sentencing hearing is held at which the State is permitted to introduce evidence of aggravating circumstances, and the defendant evidence of mitigating circumstances. Specific aggravating and mitigating circumstances are defined by statute, but the defendant is permitted to put forward any other mitigating circumstance he wishes. The State must prove the existence of the specified aggravating circumstances beyond a reasonable doubt, and the defendant must prove the existence of mitigating factors by a preponderance of the evidence. For any aggravating or mitigating circumstance to be given operative effect, it must be found unanimously by the jury. Absent unanimity, the proponent of the circumstance has failed to meet his burden of persuasion, and the circumstance will be considered not proved.

In this case, the jury was given a special verdict form on which it was asked to answer four questions. First, whether it unanimously found beyond a reasonable doubt one or more specified statutory aggravating circumstances. The jury answered "Yes" with respect to two aggravating circumstances. Second, whether it unanimously found by a pre-

ponderance of the evidence any statutory or nonstatutory mitigating circumstances. The jury answered "Yes" with respect to one statutory, and one nonstatutory, mitigating circumstance. Third, whether it unanimously found beyond a reasonable doubt that the mitigating circumstances it found were insufficient to outweigh the aggravating circumstances it found. The jury answered "Yes." Fourth, whether it unanimously found beyond a reasonable doubt that the aggravating circumstances it found were sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstances it found. The jury answered "Yes."

I think this scheme, taken as a whole, satisfies the due process and Eighth Amendment concerns enunciated by this Court. By requiring that the jury find at least one statutory aggravating circumstance, North Carolina has adequately narrowed the class of death-eligible murderers. See *Zant* v. *Stephens*, 462 U. S. 862, 877–879 (1983). On the other hand, by permitting the jury to consider evidence of, and find, *any* mitigating circumstance offered by the defendant, North Carolina has ensured that the jury will "be able to consider and give effect to that evidence in imposing sentence." *Penry* v. *Lynaugh*, 492 U. S. 302, 319 (1989). By requiring both aggravating circumstances to be found unanimously (beyond a reasonable doubt) and mitigating circumstances to be found unanimously (by only a preponderance of the evidence), North Carolina has "reduc[ed] the likelihood that [the jury] will impose a sentence that fairly can be called capricious or arbitrary." *Gregg* v. *Georgia*, 428 U. S. 153, 194–195 (1976) (opinion of Stewart, Powell, and STEVENS, JJ.). Finally, by requiring the jury unanimously to find beyond a reasonable doubt not only that the aggravating circumstances outweigh the mitigating circumstances, but also that they are sufficiently substantial in light of the mitigating circumstances to justify the death penalty, North Carolina has

provided even an extra measure of assurance that death will not be lightly or mechanically imposed.

## II

Before discussing the constitutional issue petitioner raises, I wish to address briefly the Court's assertion that we have already addressed and resolved this very issue in the past — that "our decision [in *Mills*] clearly governs this case." *Ante*, at 439. Although there is language in *Mills* v. *Maryland*, 486 U. S. 367 (1988), suggesting that a unanimity requirement would contravene this Court's decisions in *Lockett* v. *Ohio*, 438 U. S. 586 (1978), and *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982), that issue plainly was not presented in *Mills*, and can therefore not have been decided.

The Court's opinion in *Mills* begins by recounting that the Maryland Court of Appeals "did not dispute that if the statute and [verdict] form were read as petitioner suggested [*i. e.*, to require mitigating factors to be found unanimously], jurors *would be* improperly prevented from giving due consideration to mitigating evidence." *Mills*, *supra*, at 372 (emphasis in original). The State itself made the same concession in its brief before this Court. ("Under the interpretation of the statute proffered by Petitioner, an unconstitutional restriction existed in that unanimity on a particular mitigating circumstance was required before it could be weighed in determining the appropriate sentence." Brief for Respondent in *Mills* v. *Maryland*, O. T. 1987, No. 87–5367, p. 19.)[1]

---

[1] JUSTICE BLACKMUN contends that the State "defend[ed] the Court of Appeals' judgment on the alternative ground that, even if a reasonable jury might have read the instructions as requiring a unanimous finding before any mitigating factor could be considered, that requirement would not contravene the dictates of *Lockett* and *Eddings*." *Ante*, at 448. Presumably that defense would have gone somewhat as follows:

"Even though the Court of Appeals has authoritatively determined that Maryland law entitled this defendant to a jury instruction requiring a life sentence if any single juror found sufficient mitigation; and even though, as petitioner contends, the instruction here mistakenly required unanimity on

Accordingly, no controversy regarding the question that the Court today holds to have been decided by *Mills* was even before the Court—for the very simple reason that no statute

mitigation; you must nevertheless uphold the death sentence because, even though Maryland law did not in fact require unanimity, requiring it would not be unconstitutional."

It is facially implausible that Maryland's Attorney General would be rash enough to make this argument—and even more implausible that we would entertain it on its merits, rejecting it only because a unanimity requirement would, too, be unconstitutional. Quite obviously, the constitutional issue is irrelevant. *Whether or not* Maryland law could constitutionally require unanimity, the Court of Appeals authoritatively determined that it did not do so; and a death sentence based upon an erroneous instruction to that effect would have to be set aside. JUSTICE BLACKMUN is correct that "[a]mbiguous jury instructions, even in a capital case, do not violate the Eighth Amendment simply because they are ambiguous," *ante,* at 445, but they do violate the Due Process Clause if they misstate the law to the defendant's detriment—and it is not essential to that violation that the law as misstated be an unconstitutional law. Thus, to take the most extreme example, if state law, as authoritatively interpreted by the State's Supreme Court, does not authorize the death penalty for a certain offense, the Due Process Clause would not permit a state trial court to impose it even if the jury instructions comported with the Eighth Amendment. See *Hicks* v. *Oklahoma,* 447 U. S. 343 (1980) (where state law requires jury sentencing, state courts may not enforce sentence not imposed by jury).

The single passage JUSTICE BLACKMUN relies upon from the the State's brief does not support the unlikely proposition that the State made the previously described argument. It is plainly addressing the constitutionality, not of the erroneous instruction petitioner asserted had been given, but of the instruction provided by Maryland law as interpreted by the Court of Appeals. This is clear because it discusses the constitutionality of requiring unanimity for "[t]he *rejection* of a mitigating circumstance," Brief for Respondent in *Mills* 19 (emphasis added). That was the Court of Appeals' theory of what Maryland law required, whereas petitioner had argued that the instruction actually given required a mitigating circumstance to be rejected if even a single juror objected. The quoted passage appears, moreover, in a section of the brief entitled "*The Maryland Court of Appeals' interpretation* of the statutory scheme is constitutional," *id.,* at 14 (emphasis added), which is a subdivision of a part of the brief entitled: "THE MARYLAND CAPITAL PUNISHMENT STATUTE *AS INTERPRETED BY THE MARYLAND COURT OF APPEALS* PERMITS

*raising* that question was before the Court. The Maryland court had adopted what it regarded as a saving construction of the statute (*i. e.*, permitting a single juror's view to preclude rejection of a mitigating circumstance) and had said that the verdict form should be understood in that fashion. Before this Court, "[t]he critical question," and the only question disputed by the parties, was "whether petitioner's interpretation of the sentencing process is one a reasonable jury could have drawn from the instructions given by the trial judge and from the verdict form employed in this case." *Mills*, 486 U. S., at 375–376.[2] On the answer to *that* question, the Court was divided. Five Justices found a substantial risk that the jury would have understood its instructions

FULL CONSIDERATION OF EVIDENCE PRESENTED IN MITIGATION OF SENTENCE," *id.*, at 8 (emphasis added). JUSTICE BLACKMUN is correct that *State v. Kirkley*, 308 N. C. 196, 218–219, 302 S. E. 2d 144, 157 (1983), *could* be cited for the proposition that the trial court's instructions, interpreted as Mills would have it (and if Maryland law provided for such instructions), would be constitutional. But in fact Maryland's brief cited it for the more limited point that the unanimity requirements in the law as interpreted by the Court of Appeals (for both acceptance *and rejection* of mitigation, but with an automatic life sentence in the event of deadlock) do not interfere with the "consideration of evidence" and thus do not for that reason violate *Lockett* and *Eddings*. Brief for Respondent in *Mills* 20. Finally, if JUSTICE BLACKMUN were correct that the State had sought to defend the constitutionality of Mills' interpretation of the scheme, one would have expected the State at least to have mentioned that significant point at oral argument; it did not.

[2]JUSTICE BLACKMUN's citation of cases in which we decided an issue that was not argued, *ante*, at 446, is irrelevant. Deciding what was not argued is quite different from deciding what was not presented. The situation in *Mills* was not merely that no one spoke in defense of the constitutionality of a statute similar to the one now before us; nor even merely that no one had an *interest* to speak in its defense; but that the constitutionality of such a statute was irrelevant to the outcome of the case. *No such statute was presented by the facts,* the Maryland Court of Appeals having interpreted its statute differently. It is extraordinary to suggest that we could pronounce authoritatively upon the constitutionality of a statute that did not exist.

as requiring it to reject all mitigating circumstances that it failed to find unanimously, and (as the State understood would be the necessary consequence of such a finding) vacated the judgment and remanded for further proceedings. *Id.*, at 381–384. The four dissenting Justices thought the risk that a reasonable jury would have misunderstood the instructions was negligible, and thus would have affirmed. *Id.*, at 391–393 (REHNQUIST, C. J., dissenting).

The Court's characterization of *Mills* as "holding that the instructions, if [interpreted to require unanimity], were unconstitutional," *ante*, at 444, n. 8, and "strik[ing] down the Maryland scheme," *ante*, at 439, is pure revisionism. No Maryland scheme existed except the one authoritatively described by the Maryland Court of Appeals, see *Mullaney* v. *Wilbur*, 421 U. S. 684, 690–691 (1975)—which did *not* require a unanimous finding of mitigation for the defendant to receive a life sentence. To be sure, *Mills* contains language suggesting that a unanimity requirement would contravene *Lockett* and *Eddings*. See *Mills*, 486 U. S., at 374–375. But, under the circumstances, these suggestions were plainly dicta. Any doubt is resolved by JUSTICE WHITE's separate concurrence, which states in its entirety:

> "The issue in this case is how reasonable jurors would have understood and applied their instructions. That is the issue the Court's opinion addresses, and I am persuaded that the Court reaches the correct solution. Hence, I join the Court's opinion." *Id.*, at 389–390.[3]

---

[3] JUSTICE BLACKMUN states that "the meaning of a majority opinion is to be found within the opinion itself; the gloss that an individual Justice chooses to place upon it is not authoritative." *Ante*, at 448, n. 3. That is certainly true where the individual Justice is not needed for the majority. But where he is, it begs the question: the opinion is *not* a majority opinion except to the extent that it accords with his views. What he writes is not a "gloss," but the least common denominator. To be sure, the separate writing cannot add to what the majority opinion holds, binding the other four Justices to what they have not said; but it can assuredly narrow what the majority opinion holds, by explaining the more limited interpretation

Because JUSTICE WHITE provided the fifth vote to remand in *Mills*, it is impossible to regard *Mills* as resolving an issue he did not believe to have been before the Court.

## III

The constitutional issue conceded in *Mills* is both presented and contested in the present case. North Carolina's capital sentencing statute unambiguously provides that mitigating circumstances must be found by the jury unanimously. The Court finds this scheme constitutionally defective because it prevents individual jurors "from giving effect to evidence that they believe calls for a sentence less than death." *Ante*, at 439 (citing *Eddings*, 455 U. S., at 110, and *Lockett*, 438 U. S., at 604) (internal quotations omitted). This is so because each juror's answers to the ultimately dispositive Issues Three and Four can take account of only those mitigating circumstances found by the jury unanimously under Issue Two. Thus, any juror who concludes that the defendant has proved additional mitigating circumstances is precluded by his colleagues' disagreement from giving that conclusion effect. The Court several times refers to the prospect that one "'holdout' juror" will prevent the other 11 from reaching the decision they wish, *ante*, at 438, but the reader should not be misled: The constitutional principle appealed to is not majority rule but just the opposite. According to the Court, North Carolina's system in which one juror can prevent the others from giving effect to a mitigating circumstance is invalid only because the Constitution *requires*, in the context

adopted by a necessary member of that majority. If the author of the opinion finds what the "glossator" says inconsistent with his own understanding of the opinion, he may certainly decline, at the outset of the opinion, to show that Justice as joining; and if the "glossator" nonetheless insists upon purporting to join, I suppose the author can explicitly disclaim his company. But I have never heard it asserted that four Justices of the Court have the power to fabricate a majority by binding a fifth to their interpretation of what they say, even though he writes separately to explain his own more narrow understanding.

of the North Carolina statute, a system in which one juror
can prevent the others from *denying effect* to a mitigating cir-
cumstance. The "'holdout' juror" scenario provides attrac-
tive atmosphere, but the alleged constitutional principle upon
which the decision rests is that *"each juror* [must] be permit-
ted to consider *and give effect* to mitigating evidence when
deciding the ultimate question whether to vote for a sentence
of death," *ante*, at 442 (emphasis added), and "may not be
foreclosed by one *or more* jurors' failure," *ante*, at 443 (em-
phasis added), to find that those mitigating facts existed, or
that those existing facts were mitigating. Such a scheme,
under which (at least where the statute requires the jury's
recommendation of death to be unanimous) a single juror's
finding regarding the existence of mitigation *must* control, is
asserted to be demanded by "the principle established in
*Lockett* v. *Ohio*, 438 U. S. 586 (1978), that a sentencer may
not be precluded from giving effect to all mitigating evi-
dence." *Ante*, at 438.

With respect, "the principle established in *Lockett*" does
not remotely support that conclusion. In *Lockett*, the Court
vacated a death sentence imposed under a statute that lim-
ited the sentencing judge's consideration of mitigating factors
to three statutory circumstances. A plurality of the Court
reasoned that "the Eighth and Fourteenth Amendments re-
quire that the sentencer, in all but the rarest kind of capital
case, not be precluded from considering, as a mitigating fac-
tor, any aspect of a defendant's character or record and any
of the circumstances of the offense that the defendant prof-
fers as a basis for a sentence less than death." 438 U. S., at
604 (opinion of Burger, C. J.) (emphasis omitted; footnotes
omitted). Similarly, in *Eddings*, also relied upon by the
Court, we vacated a death sentence because the sentencing
judge refused to consider evidence proffered by the defend-
ant of his unhappy upbringing. We reasoned: "Just as the
State may not by statute preclude the sentencer from consid-
ering any mitigating factor, neither may the sentencer refuse

to consider, *as a matter of law,* any relevant mitigating evidence." 455 U. S., at 113–114 (emphasis in original). Accord, *Penry* v. *Lynaugh,* 492 U. S., at 328 (failure to instruct Texas jury that it could consider and give effect to mitigating evidence beyond the scope of three statutory special issues inconsistent with *Lockett* and *Eddings); Hitchcock* v. *Dugger,* 481 U. S. 393 (1987) (trial judge's belief that Florida law prohibited consideration of nonstatutory mitigating circumstances and corresponding instruction to the jury contravened *Lockett); Skipper* v. *South Carolina,* 476 U. S. 1 (1986) (trial judge's failure to permit jury to consider evidence of defendant's good behavior in prison inconsistent with *Lockett* and *Eddings).*

The principle established by these cases is that a State may not preclude *the sentencer* from considering and giving effect to evidence of any relevant mitigating circumstance proffered by the defendant. See *Penry, supra,* at 319 (*"The sentencer* must . . . be able to consider and give effect to [mitigating] evidence in imposing sentence") (emphasis added); *Hitchcock, supra,* at 394 (*"[T]he sentencer* may not refuse to consider or be precluded from considering any relevant mitigating evidence") (internal quotations omitted; citations omitted; emphasis added); *Skipper, supra,* at 5 (mitigating "evidence may not be excluded from *the sentencer's* consideration") (emphasis added); *Eddings, supra,* at 114 (*"[T]he sentencer* [may not] refuse to consider . . . any relevant mitigating evidence") (emphasis added); *Lockett, supra,* at 604 ("Eighth and Fourteenth Amendments require that *the sentencer . . .* not be precluded from considering" mitigating evidence) (emphasis added; footnote omitted). The sentencer in this case was the North Carolina jury, which has not been precluded from considering and giving effect to all mitigating circumstances.

What petitioner complains of here is not a limitation upon *what* the sentencer was allowed to give effect to, but rather a limitation upon the *manner* in which it was allowed to do so—

viz., only unanimously. As the Court observes today, that is a crucial distinction. "There is a simple and logical difference between rules that govern *what* factors the jury must be permitted to consider in making the sentencing decision and rules that govern *how* the State may guide the jury in considering and weighing those factors in reaching a decision." *Saffle* v. *Parks, post,* at 490 (emphasis added). In holding that a rule invalidating an antisympathy instruction would be a new rule under *Teague* v. *Lane,* 489 U. S. 288 (1989), we concluded that *Lockett* and *Eddings* "do not speak directly, if at all, to" "*how* [the jury] must consider the mitigating evidence," as opposed to "*what* mitigating evidence the jury must be permitted to consider in making its sentencing decision." *Saffle, post,* at 490. Accord, *Franklin* v. *Lynaugh,* 487 U. S. 164, 181 (1988) (plurality opinion) ("[W]e have never suggested that jury consideration of mitigating evidence must be undirected or unfocused"). In short, *Lockett* and *Eddings* are quite simply irrelevant to the question before us, and cannot be pressed into service by describing them as establishing that "*a* sentencer [by which the reader is invited to understand an individual member of the jury] may not be precluded from giving effect to all mitigating evidence." *Ante,* at 438 (emphasis added).

## IV

Nothing in our prior cases, then, supports the rule the Court has announced; and since the Court does not even purport to rely upon constitutional text or traditional practice, nothing remains to support the result. There are, moreover, some affirmative indications in prior cases that what North Carolina has done is constitutional. Those indications are not compelling—for the perverse reason that the less support exists for a constitutional claim, the less likely it is that the claim has been raised or taken seriously before, and hence the less likely that this Court has previously rejected it. If petitioner should seek reversal of his sentence because

two jurors were wearing green shirts, it would be impossible to say anything against the claim except that there is nothing to be said *for* it—neither in text, tradition, nor jurisprudence. That is the point I have already made here, and that alone suffices.

With the caution, however, that it is entirely superfluous, I may mention several aspects of our jurisprudence that appear to contradict the Court's result. To begin with, not only have we never before invalidated a jury-unanimity requirement, but we have approved schemes imposing such a requirement in contexts of great importance to the criminal defendant—for example, as a condition to establishing the defense of self-defense in a capital murder case, see *Martin* v. *Ohio*, 480 U. S. 228 (1987); Ohio Rev. Code Ann. §§ 2903.01, 2929.02 (1987); Ohio Rule Crim. Proc. 31(A), as a condition to establishing the defense of extreme emotional disturbance in a second-degree murder case, see *Patterson* v. *New York*, 432 U. S. 197 (1977); N. Y. Crim. Proc. Law § 310.80 (McKinney 1971), and as a condition to establishing the defense of insanity in a second-degree murder case, see *Rivera* v. *Delaware*, 429 U. S. 877 (1976); Del. Super. Ct. Crim. Rule 31(a), Del. Code Ann., vol. 17, p. 227 (1975).[1]

---

[1] JUSTICE BLACKMUN finds the analogy to affirmative defenses less than persuasive because he says that "it is not at all clear" that "the jury's failure to agree as to an affirmative defense results in a conviction," "rather than a hung jury." *Ante*, at 450–451. It would be interesting to know the basis for that doubt with respect to the jurisdictions I have cited. Under New York law, for example, the jury's verdict—whether guilty or not guilty—must be unanimous. See N. Y. Crim. Proc. Law § 310.80 (McKinney 1982). When an affirmative defense is raised, "the court must carefully instruct the jury that they must be satisfied of defendant's guilt of the offense beyond a reasonable doubt before they may consider the affirmative defense." Practice Commentary following N. Y. Penal Law § 25.00, p. 77 (McKinney 1987); see *People* v. *Morris*, 68 App. Div. 2d 893, 413 N. Y. S. 2d 757 (1979); 31 N. Y. Jur. 2d, Criminal Law § 188, pp. 335–336 (1983) ("[G]uilt must be established beyond a reasonable doubt before the jury can even consider an affirmative defense"). If the jurors follow their instructions, it would appear that the jury that has considered but not

468

Of course the Court's holding today—and its underlying thesis that each individual juror must be empowered to "give effect" to his own view—invalidates not just a requirement of *unanimity* for the defendant to benefit from a mitigating factor, but a requirement of *any* number of jurors more than one. Thus it is also in tension with *Leland* v. *Oregon*, 343 U. S. 790 (1952), which upheld, in a capital case, a requirement that the defense of insanity be proved (beyond a reasonable doubt) to the satisfaction of at least 10 of the 12-member jury. Even with respect to proof of the substantive offense, as opposed to an affirmative defense, we have approved verdicts by less than a unanimous jury. See *Apodaca* v. *Oregon*, 406 U. S. 404 (1972) (upholding state statute providing for conviction by 10-to-2 vote). We have, to be sure, found that a criminal verdict by less than all of a six-person jury is unconstitutional—not, however, because of any inherent vice in nonunanimity, but because a 5-to-1 verdict, no less than a 5-to-0 verdict, see *Ballew* v. *Georgia*, 435 U. S. 223 (1978), "presents a . . . threat to preservation of the substance of the jury trial guarantee." *Burch* v. *Louisiana*, 441 U. S. 130, 138 (1979).

The Court discusses briefly one of the above cases *(Patterson)*, in which we said that if a State "chooses to recognize a factor that mitigates the degree of criminality or punishment, . . . the State may assure itself that the fact has been established with reasonable certainty." 432 U. S., at 209. It distinguishes that case, and presumably would distinguish the rest I have cited, as follows: "The Constitution *requires* States to allow consideration of mitigating evidence in capital cases. Any barrier to such consideration must therefore fall." *Ante,* at 442. But surely the Constitution also requires States to allow consideration of all evidence bearing

---

unanimously found an affirmative defense must return a verdict of guilty. One wonders what proportion of the jury JUSTICE BLACKMUN believes is necessary to find an affirmative defense (if not all 12) in those States where the law does not explicitly specify a majority.

upon the substantive criminal offense and consideration of all evidence bearing upon affirmative defenses. If, in those contexts, it is not regarded as a "barrier" to such consideration to require unanimity before any single juror's evaluation of the evidence can be "given effect" to the defendant's advantage, I do not understand why a comparable requirement constitutes a "barrier" to consideration of mitigation. Or why, in the latter context, assuring "reasonable certainty" is no longer a legitimate objective.

Likewise incompatible with the Court's theory is the principle of guided discretion that we have previously held to be essential to the validity of capital sentencing. States, we have said, "must channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance' and that 'make rationally reviewable the process for imposing a sentence of death.'" *Godfrey* v. *Georgia*, 446 U. S. 420, 428 (1980) (plurality opinion) (footnotes omitted). There is little guidance in a system that requires each individual juror to bring to the ultimate decision his own idiosyncratic notion of what facts are mitigating, untempered by the discipline of group deliberation and agreement. Until today, I would have thought that North Carolina's scheme was a model of guided discretion. The requirement that the jury determine four specific issues operates like a special verdict — a device long recognized as enhancing the reliability and rationality of jury determinations. See, *e. g.*, Sunderland, Verdicts, General and Special, 29 Yale L. J. 253, 261 (1920). Moreover, by enabling the reviewing court to examine the specific findings underlying the verdict it facilitates appellate review, which we have described as "an important additional safeguard against arbitrariness and caprice." *Gregg* v. *Georgia*, 428 U. S., at 198 (opinion of Stewart, Powell, and STEVENS, JJ.). "Where the sentencing authority is required to specify the factors it relied upon in reaching its decision, the further safeguard of meaningful appellate review is available to ensure that death sentences are not imposed capriciously or

in a freakish manner." *Id.*, at 195. Accord, *Zant* v. *Stephens*, 462 U. S., at 890; *Proffitt* v. *Florida*, 428 U. S. 242, 253 (1976) (opinion of Stewart, Powell, and STEVENS, JJ.).

The Court strikes down this eminently reasonable scheme. The quality of what it substitutes is conveniently evaluated by considering how future North Carolina juries will behave under the Court's own doomsday hypothetical, in which all jurors believe the defendant has proved one mitigating circumstance, but each believes a different one. *Ante,* at 439–440. A jury, of course, is not a collection of individuals who are asked separately about their independent views, but a body designed to deliberate and decide collectively. See *Williams* v. *Florida*, 399 U. S. 78, 100 (1970) (Sixth Amendment requires a jury "large enough to promote group deliberation"); *Ballew* v. *Georgia*, 435 U. S. 223 (1978) (five-person jury too small); *id.*, at 232–234 (opinion of BLACKMUN, J.) (small juries impede group deliberation). But after today's decision, in the hypothetical the Court has posed, it will be quite impossible for North Carolina sentencing juries to "deliberate" on the dispositive questions (Issues Three and Four—whether the aggravating circumstances outweigh the mitigating circumstances, and whether in light of the mitigating circumstances the aggravating circumstances justify death), because no two jurors agree on the identity of the "mitigating circumstances." Each juror must presumably decide in splendid isolation, on the basis of his uniquely determined mitigating circumstance, whether death should be imposed. What was supposed to be jury trial has degenerated into a poll. It seems to me inconceivable that such a system should be—not just tolerated under the Constitution—but constitutionally prescribed.[5]

---

[5] JUSTICE BLACKMUN believes that this grotesque distortion of normal jury deliberations cannot be blamed upon the rule the Court today announces, but is rather North Carolina's own fault, because the scheme it has adopted represents "an extraordinary departure from the way in which juries customarily operate." *Ante,* at 449. Typically, he points out, ju-

\*     \*     \*

In sum, the constitutional prohibition asserted by the petitioner was not decided in *Mills* and is not supported by *Lockett* and *Eddings*. Since nothing else is adduced to support it, there is no basis for believing that it exists. It is, moreover, contrary to the constitutional principles governing jury trial in other contexts, contrary to the principle of guided discretion that launched our modern incursion into the field of capital sentencing, and destructive of sound jury deliberation. When we abandon text and tradition, and in addition do not restrict prior cases to their holdings, knowing and observing the law of the land becomes impossible. State officials sworn to uphold the Constitution we expound rush to comply with one of our newly designed precepts, only to be told that by complying they have violated another one that points in the opposite direction. Compare *Furman* v. *Georgia*, 408 U. S. 238 (1972) (invalidating discretionary death penalty), with *Woodson* v. *North Carolina*, 428 U. S. 280 (1976) (invalidating mandatory death penalty enacted in light of *Furman*). I dissent from today's decision, and from the unpredictable jurisprudence of capital sentencing that it represents.

---

ries "are . . . called upon to render unanimous verdicts on the ultimate issues of a given case," with "no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *Ibid.* This is the sort of argument that causes state legislators to pull their hair. A general verdict is of course the usual practice. *But it is this Court that has pushed the States to special verdicts in the capital sentencing field.* We have intimated that requiring "the sentencing authority . . . to specify the factors it relied upon in reaching its decision" may be necessary to ensure, through "meaningful appellate review [,] that death sentences are not imposed capriciously or in a freakish manner." *Gregg* v. *Georgia*, 428 U. S. 153, 195 (1976) (opinion of Stewart, Powell, and STEVENS, JJ.). Disparaging a practice we have at least encouraged, if not indeed coerced, gives new substance to the charge that we have been administering a "bait and switch" capital sentencing jurisprudence.