

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. AP-75,896

**EX PARTE SHELTON DENORIA JONES, Applicant**

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 596207-B IN THE 248th JUDICIAL DISTRICT COURT
### HARRIS COUNTY

**JOHNSON, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., joined. PRICE, J., filed a dissenting opinion in which HOLCOMB, J., joined. HOLCOMB, J., filed a dissenting opinion in which PRICE, J., joined.**

### O P I N I O N

This is a subsequent application for writ of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure article 11.071, § 5. We deny relief.

In November 1991, a jury convicted applicant of the offense of capital murder. The jury answered the special issues submitted pursuant to Code of Criminal Procedure article 37.071, and the trial court, accordingly, set punishment at death. *Jones v. State*, No. AP-71,369 (Tex. Crim. App. May 4, 1994)(not designated for publication).

The punishment jury-charge instruction at issue in this cause read,

If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the defendant, then a negative finding should be given to one of the special issues.

The punishment jury charge also included the two statutory special issues. Special Issue No. 1 asked, "Was the conduct of [applicant] that caused the death of the deceased committed deliberately and with the reasonable expectation that the death of the deceased or another would result?" Special Issue No. 2 asked, "Is there a probability that [applicant] would commit criminal acts of violence that would constitute a continuing threat to society?" The jury answered both issues affirmatively, and the verdict form, which contained no reference to mitigating evidence, reflected that, in open court, the jury returned those affirmative answers to special issues as its verdict. The trial court accordingly assessed a sentence of death.

We denied applicant's initial post-conviction application for writ of habeas corpus and dismissed his first subsequent application for writ of habeas corpus. *Ex parte Jones*, Nos. WR-62,589-01 and WR-62,589-02 (Tex. Crim. App. October 26, 2005)(not designated for publication).

On March 6, 2006, this Court received the instant post-conviction application for writ of habeas corpus, in which applicant raised a single allegation: the former special issues failed to provide an adequate vehicle for the jury to give full consideration and effect to his mitigating evidence. He asserted that the nullification instruction that he did receive had the same constitutional inadequacies. On September 13, 2006, we found that the allegation satisfies the requirements of Article 11.071, § 5(a), and that the requirements for consideration of a subsequent application had been met. Accordingly, we remanded the cause to the trial court for consideration

of the allegation.

Upon its return from remand, on April 9, 2008, we filed and set this case for submission to the Court. The parties were ordered to brief a number of issues:

> 1) Was applicant's trial objection sufficient to preserve error? Should this Court continue to utilize the *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985), standard of review? If so, has applicant shown "some harm" (if preserved) or "egregious harm" (if not preserved)?

> 2) Does applicant's mitigating evidence meet the *Tennard v. Dretke*, 542 U.S. 274 (2004), "low threshold for relevance" standard?

> 3) Is applicant's mitigating evidence adequately encompassed within the statutory special issues? Does the future dangerousness issue provide a vehicle for the jury to express its reasoned moral response to this evidence?

### The Contentions of the Parties

Applicant contends that error was preserved because the record reflects that defense counsel expressly stated that his request for modification of the jury charge was being made pursuant to *Penry I.* Further, when the trial court asked the state to respond, the prosecutor stated that it was the state's position that the proposed instruction adequately charged the jury on the issues decided in the *Penry* case. Applicant argues that the problematic special issues, in conjunction with the nullification instruction as applied to the mitigating evidence in this case, resulted in error that defies harm analysis and that the harm from such error satisfies any standard for harm, "egregious" or "some." Applicant suggests that, since either harm standard is met, this Court need not decide which standard applies.

Applicant contends that his evidence met *Tennard*'s low-threshold standard for relevance, and "that the former special issues of the Texas capital-sentencing scheme did not provide an adequate vehicle for the jury to give full consideration and full effect to his mitigating evidence."

He also asserts that "[t]he problem was not cured by providing a supplemental charge that instructed the jurors to answer one of the special issues dishonestly if they believed that the mitigating evidence justified a sentence less than death," and that the special issues and instructions given to his sentencing jury did not permit the jury to give full consideration and effect to that evidence.

In support of his argument, applicant asserts that a rational juror at the penalty phase could have concluded, in light of the evidence at the guilt phase, that applicant's conduct was deliberate in that it may have been designed to avoid arrest or motivated by some other purpose, but nevertheless, a juror might also have reasonably concluded that applicant's psychological condition reduced his moral culpability so as to make a death sentence unwarranted. He argues, that under those circumstances, honestly answering the deliberateness special issue would have required an affirmative answer, thus the deliberateness special issue could not serve as a vehicle for the jury to express its reasoned moral response to his mitigating evidence.

Applicant also asserts that the mitigating evidence concerning his psychological profile, which indicates that he is influenced by consistent, strong external forces, is relevant to the second special issue, but as an aggravating factor because it suggested a "yes" answer to the question of future dangerousness. He contends that this circumstance left the jury without an adequate vehicle to express its reasoned moral response to his evidence of his psychological impairment.

The evidence that applicant presented at trial, and to which he now points as relevant mitigating evidence that is outside the scope of the special issues, includes a psychological impairment that makes him susceptible to the influences of consistent, stronger, anti-social personalities in his environment, his abandonment by his biological father, and his intelligence, work ethic, reliability, and trustworthiness. He contends that the special issues and the instructions given

did not permit the jury to give full consideration and full effect to that evidence.

Applicant argues that the jurors "could not express the moral judgment that a death sentence was excessive in light of [his] intelligence, good work ethic, reliability, and trustworthiness, if they also concluded beyond a reasonable doubt that he might be dangerous in the future." Applicant's brief on submission, p. 17. He asserts that the future-dangerousness special issue was thus "a deficient vehicle for giving all of [his] mitigating evidence meaningful consideration as a basis for a sentence less than death." Applicant's brief on submission, p. 18. Applicant asserts that "[a] sentencing scheme that conditions consideration of any of a defendant's constitutionally relevant mitigating evidence on jurors' willingness to disregard their oaths to render a true verdict is precisely the sort of structural error that cannot be subject to routine harmless error review." Applicant's brief on submission, p. 34. He also argues that, between the special issues that prevented the jurors from giving their reasoned moral response to his mitigating evidence and the nullification instruction that inserted capriciousness into the proceeding, the resulting error severely and irrevocably warped the framework of the proceeding, thus resulting in error that defies harm analysis.

The state argues that applicant has not preserved error. It notes that applicant objected only to specific wording in the supplemental mitigation instruction and not on the basis of the instruction in its entirety, nor did applicant object on the basis of the jury's ability to consider applicant's mitigating evidence. Further, applicant failed to allege jury-charge error based on the nullification instruction and the jury's ability to consider and give effect to his mitigation evidence on direct appeal and in his first and second writ applications. State's brief on submission, p. 17-18.

Noting that the Supreme Court, in *Smith v. Texas*, 550 U.S. 297, 313 (2007)(Smith II), approved the application of the *Almanza* standard of review, the state asserts that *Almanza* should

apply, that the applicable option is that for unobjected-to error, that applicant must therefore demonstrate egregious harm, and that he has not done so.

With respect to relevance, the state agrees that "applicant's mitigating evidence satisfies *Tennard*'s low threshold standard for relevance." (State's Brief, pp. 15, 25, 28)  The state nevertheless asserts that the jury "could give meaningful consideration and effect to the applicant's mitigating evidence under the special issues, including evidence of applicant's 'empty vessel' personality and father's abandonment." (State's Brief, p. 15)  It adds that, even if the jury was unable to consider under the special issues applicant's evidence that he was abandoned by his father, such evidence had only a tenuous connection to applicant's culpability for the instant offense.

### Analysis

### *Tennard v. Dretke* Standard

Applicant asserts that his "mitigating evidence satisfies *Tennard*'s low threshold standard for relevance."  The state concedes that the evidence meets the standard.    We agree with applicant and the state that applicant's mitigating evidence satisfies the *Tennard* standard, thus we continue our inquiry and consider whether applicant's mitigating evidence could be given full effect within the special issues or fell outside their scope.

### Reasoned Moral Response to Mitigating Evidence

In 2007, the Supreme Court issued opinions in two companion cases, *Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007), and *Brewer v. Quarterman*, 550 U.S. 286  (2007).  In *Abdul-Kabir*, which revisited *Penry I*[1] and its progeny, it stated that

the jury must be permitted to "consider fully" such mitigating evidence and that such

---

[1]  *Penry v. Lynaugh*, 492 U.S. 302 (1989).

consideration "would be meaningless" unless the jury not only had such evidence available to it, but also was permitted to give that evidence meaningful, mitigating effect in imposing the ultimate sentence. *Penry I*, 492 U.S., at 321, 323, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (internal quotation marks omitted); *Graham*, 506 U.S., at 475, 113 S. Ct. 892, 122 L. Ed. 2d 260 (acknowledging that a "constitutional defect" has occurred not only when a jury is "precluded from even considering certain types of mitigating evidence," but also when "the defendant's evidence [i]s placed before the sentencer but the sentencer ha[s] no reliable means of giving mitigating effect to that evidence").

*Abdul-Kabir* at 260. *See also Ex parte Moreno*, 245 S.W.3d at 422 (Tex. Crim. App. 2008)("a jury must be empowered by the trial court's instructions to give 'meaningful effect' to all mitigating evidence that a capital defendant introduces at the punishment phase of his trial.").

The sentencer in a capital case must be permitted to give full effect to all constitutionally relevant mitigating evidence. *Tennard v. Dretke*, 542 U.S. 274, 284-85 (2004); *Penry I*, 492 U.S. at 318. Relevance in the context of mitigating evidence introduced in a capital sentencing proceeding is no different than in any other context, thus the general evidentiary standard applies: evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence is relevant. *Id.*, *citing McKoy v. North Carolina*, 494 U.S. 433 (1990). Thus the state cannot bar the consideration of evidence if the sentencer could reasonably find that it warrants a sentence less than death. *Id.* "Once this low threshold for relevance is met, 'the Eighth Amendment requires that the jury be able to consider and give effect to' a capital defendant's mitigating evidence." *Id.* at 285, *quoting Boyde v. California*, 494 U.S. 370, 377-78 (1990). "Relevant mitigating evidence is evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value." *Id.* at 284-85, *quoting McKoy v. North Carolina*. Such *Penry* error produces a reasonable likelihood that the jury interpreted the special issues to foreclose adequate consideration

of the mitigating evidence. *Smith II* at 316.

In *Penry v. Johnson*, 532 U.S. 782 (2001)(*Penry II*), the Supreme Court held that the jury instruction on mitigation was ineffective and illogical. The Court noted that attempts by the trial court, the state, and the defense to clarify the supplemental instruction "do not bolster our confidence in the jurors' ability to give effect to Penry's mitigating evidence in deciding his sentence. Rather they highlight the arbitrary way in which the supplemental instruction operated, and the fact that the jury was essentially instructed to return a false answer to a special issue in order to avoid a death sentence." *Id*. at 801. The instruction at issue in *Penry* is virtually identical to the instruction from this case.[2] Thus the nullification instruction in this case was not sufficient to cure error if the special-issue instructions themselves were inadequate to permit the jurors to give meaningful effect to applicant's mitigating evidence.

Applicant suggests that much of his evidence was mitigating and outside the scope of the special issues. Among the circumstances found by the Supreme Court to fall outside the scope of the old special issues are a troubled childhood,[3] learning disabilities,[4] low IQ/special education

---

[2] The portion of the instruction quoted in *Penry II* reads,

> If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the defendant, a negative finding should be given to one of the special issues.

*Penry II*, 532 U.S. at 790. The relevant portion of the instruction in the instant cause reads,

> If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the defendant, then a negative finding should be given to one of the special issues.

[3] *Brewer*, 550 U.S. at 289-90; *see also, Moreno*, 245 S.W.3d at 426.

[4] *Smith v. Texas*, 543 U.S. 37, 48 (*Smith I*)

status,[5] neglect,[6] abandonment,[7] neurological damage,[8] substance abuse,[9] family violence in childhood,[10] mental illness,[11] and domination by another.[12] Circumstances that fall within the scope of the special issues include youth[13] and redeeming personal qualities.[14]

In *Smith I*, the Supreme Court described a variety of mitigating evidence: at an early age, the defendant had been diagnosed with potential organic learning disabilities and speech handicaps; the defendant had IQ scores of 75 and 78, and as a result had been in special-education classes during most of his time in school; despite his low IQ and learning disabilities, the defendant's behavior at school was often exemplary; the defendant's father was a drug addict who engaged in gang violence and criminal activities and stole money from family members to support a drug addiction; and the defendant was 19 years old when he committed the crime. *Smith I*, 543 U.S. at 41. Of these, the Supreme Court found that Smith's evidence of his IQ scores and history of participation in special-education classes was relevant mitigating evidence that a jury might have considered to be a reason to impose a sentence less than death and was outside the scope of the special issues. *Id*. at 44-45.

---

[5] *Id*.

[6] *Abdul-Kabir*, 550 U.S. at 240-41, 256.

[7] *Id*.

[8] *Id*.

[9] *Brewer*, 550 U.S. at 295-96.

[10] *Id*.

[11] *Id*.; *see also Martinez*, 233 S.W.3d at 320.

[12] *Brewer* at 295-96.

[13] *Johnson v. Texas*, 509 U.S. 350, 369 (1993); *Graham v. Collins*, 506 U.S. 461, 475-76 (1993).

[14] *Graham*, 506 U.S. at 475-76.

In *Abdul-Kabir*, *supra*, the Supreme Court noted mitigating evidence that included the defendant's family members' testimony describing his unhappy childhood of neglect and abandonment, as well as expert testimony from two psychologists "that his violent propensities were caused by factors beyond his control–namely, neurological damage and childhood neglect and abandonment" and "suggesting that his dangerous character may have been the result of his rough childhood and possible neurological damage[.]" *Abdul-Kabir*, 550 U.S. at 240-41, 256.

In *Brewer*, the Supreme Court likewise noted that the defendant's mitigating evidence included that: the defendant had suffered from depression three months before the offense; he had been briefly hospitalized for that depression; the defendant's co-defendant, a woman with whom he was obsessed, dominated and manipulated him; he had been abused by his father; he had witnessed his father abuse his mother; and he had abused drugs. *Brewer*, 550 U.S. at 289-90. The Court concluded that the jury must be allowed to consider Brewer's evidence of mental illness, substance abuse, and troubled childhood, and also must be able to respond to it in a reasoned, moral manner and weigh such evidence in deciding whether the defendant is truly deserving of death. *Id*. at 295-96.

In *Penry I*, the Supreme Court concluded that the special issues were too limited to give mitigating effect to the defendant's evidence of mental retardation and severe childhood abuse and that such mitigating evidence was thus outside the scope of the special issues.

While "[t]he jury must have a 'meaningful basis to consider the relevant mitigating qualities' of the defendant's proffered evidence[,]" *Abdul-Kabir*, 550 U.S. at 259, *quoting Johnson v. Texas*, 509 U.S. 350 (1993), the special issues alone may provide for the adequate consideration of the defendant's mitigating evidence. We observe that in *Graham v. Collins*, 506 U.S. 461, 475-76

(1993) the Supreme Court held that proffered mitigating evidence of the defendant's youth, background of difficult upbringing, and his redeeming character traits could be given constitutionally adequate consideration in the course of the jury's deliberation on the special issues and was thus not beyond the effective reach of the jury. In *Johnson v. Texas*, 509 U.S. 350, 369 (1993), the Supreme Court likewise held that the defendant's youthful age as a relevant mitigating circumstance was within the effective reach of the jury; "the ill effects of youth that a defendant may experience are subject to change and, as a result, are readily comprehended as a mitigating factor in consideration of the second special issue." *Johnson*, 509 U.S. at 369.

In *Moreno*, the mitigating evidence at issue involved Moreno's troubled childhood, including a birth defect to his left ear which required multiple surgeries throughout his first seven years. There was evidence that he was also taunted by neighborhood boys because of the deformity, although he was consoled by his mother. When he was still a small child, his mother and grandmother both became very ill, and his father had to get a second job in order to pay the medical expenses. When he was fifteen years old, his mother died, and he took her death very hard. Thereafter he dropped out of school, worked at various poorly paid jobs, and lived in his father's house relatively unsupervised. He was eighteen years old at the time he committed the charged offense. Additional mitigating evidence included testimony from various family friends and jail chaplains about his good personal characteristics. *Moreno*, 245 S.W.3d at 423-24. We concluded that "[a]t least with respect to his evidence of a troubled childhood, [Moreno] was entitled to" a jury instruction as a vehicle to express its reasoned moral response to such mitigating evidence. *Id*. at 425. We held that because circumstances of the offender can reasonably justify a jury assessment of a life sentence, and if those circumstances are not already fully or meaningfully encompassed within one or both of the special

issues, then a separate jury instruction is constitutionally required. *Id*. at 426.

We also noted that we could "no longer maintain that evidence of a troubled childhood is adequately encompassed within the statutory special issues." *Id*. Because the evidence of Moreno's troubled childhood could not be given meaningful effect within the context of the statutory special issues and the trial court failed to give a separate jury instruction that would empower the jury to assess a life sentence on the basis of such mitigating evidence, notwithstanding its answers to the special issues, we vacated the punishment portion of Moreno's judgment and remanded to the trial court for a new punishment hearing. *Id*. at 431. The mitigating evidence that was held to be outside the scope of the special issues was that of the defendant's troubled childhood.

In *Ex parte Martinez*, 233 S.W.3d 319, 320 (Tex. Crim. App. 2007), we noted mitigating evidence of the defendant's hospitalization on multiple occasions in state psychiatric facilities, his abuse of alcohol since the age of thirteen, and a troubled childhood. We concluded that Martinez had presented constitutionally relevant mitigating evidence and that the jury did not have a vehicle to give this evidence meaningful consideration. We therefore granted habeas corpus relief, set aside the death sentence, and remanded the case to the trial court for another punishment hearing. *Martinez*, 233 S.W.3d at 323-24.

In each of these cases, the mitigating evidence that was held to be outside the scope of the special issues differs significantly from applicant's mitigating evidence. We are unconvinced that applicant's proffered mitigating evidence was outside the scope of the special issues. Applicant did not show evidence of a seriously troubled childhood. Rather, evidence showed that he had a stable family background and was raised in a cohesive two-parent household, albeit not by his biological father, who abandoned him. There was no evidence of learning disabilities, low IQ, or neurological

damage. Rather, there was testimony about applicant's intelligence. There was no testimony that he abused substances. Although applicant presented evidence that he suffers from psychological irregularities or deficits, including what his psychologist expert witness described as "empty vessel syndrome," which made him susceptible to being influenced by others, such evidence is a far-cry from the sort of psychological mitigation evidence that has been determined to be *Penry* evidence. Further, the facts of the offense rebut that assessment as to the offense charged; applicant shot a police officer during a traffic stop, without provocation or urging of armed violence by his companion. The testimony as to his youth and redeeming character traits is the sort that the Supreme Court has held to fall within the scope of the special issues.

We note that the Supreme Court has said that it has "never denied that gravity has a place in the relevance analysis, insofar as evidence of a trivial feature of the defendant's character or the circumstances of the crime is unlikely to have any tendency to mitigate the defendant's culpability. . . . Rather, the question is simply whether the evidence is of such a character that it might serve as a basis for a sentence less than death, *Skipper* [v. *South Carolina,* 476 U.S. 1 (1986)], *supra,* at 5." *Tennard*, 542 U.S. at 286 (internal quotation marks omitted). We conclude that applicant's mitigation evidence, while meeting the *Tennard* standard for relevance, had "only a tenuous connection–'*some* arguable relevance'–to the defendant's moral culpability." *Abdul-Kabir*, 550 U.S. at 253 n.14. Of all the sorts of evidence that have been noted by the Supreme Court as relevant mitigating evidence, only two circumstances, youth and positive personal characteristics, are present in this case, and those are the sorts of evidence that the Supreme Court has held are within the scope of the former special issues. Because the jury could give full and meaningful effect to that evidence within the scope of the former special issues, there was no *Penry* error.

Relief is denied.


Delivered: June 10, 2009
Do not publish